[Cite as *Cyrus v. Ohio Rehab. Servs. Comm.*, 2023-Ohio-1506.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

James E. Cyrus

Court of Appeals No. L-22-1031

    Appellant

Trial Court No. CI0202102256

v.

Ohio Rehabilitation Services Commission
n/k/a Opportunities for Ohioans with
Disabilities, Bureau of Services for the
Visually Impaired

**DECISION AND JUDGMENT**

    Appellee

Decided: May 5, 2023

* * * * *

Fazeel S. Khan, for appellant.

Dave Yost, Ohio Attorney General, and Crystal R. Richie,
Principal Assistant Attorney General, for appellee.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an accelerated appeal from a judgment of the Lucas County Court of

Common Pleas which denied appellant's motion to enforce settlement agreement and for

preliminary injunction.  For the reasons set forth below, this court affirms the judgment of the trial court.

## I. Background

{¶ 2} On June 9, 2021, as amended on August 16, plaintiff-appellant James E. Cyrus filed a complaint for enforcement of settlement agreement and for injunctive relief against defendant-appellee Opportunities for Ohioans with Disabilities, Bureau of Services for the Visually Impaired ("OOD/BSVI").[1]  Appellant alleged that in 2006, he and appellee entered into a valid, enforceable settlement agreement (hereafter, "the Settlement Agreement")[2] which appellee unilaterally terminated.  Appellant alleged the Settlement Agreement authorized appellant the exclusive right to be the blind-vendor operator of broad types of vending services at the University of Toledo's Health Sciences Campus ("UTHSC") under various conditions, which he met.  Appellant prayed for an order enforcing the Settlement Agreement against appellee and for preliminary and permanent injunctive relief against appellee "from taking any actions to prevent Cyrus from resuming operation of the Market Café," which he suspended in September 2020. Appellant alleged the Market Café, which he began operating in 2018, is a type of non-

---

[1] Appellant originally named The University of Toledo as a co-defendant, then voluntarily dismissed that party, without prejudice, on August 13, 2021. The University of Toledo is not a party to this appeal.
[2] Appellant attached to his amended complaint five exhibits, one of which is the "Mutual Settlement Agreement" dated October 19, 2006 between appellant and Ohio Rehabilitation Services Commission ("ORSC")/BSVI/Business Enterprise Program ("BEP"). Under paragraph 12, the agreement became effective on October 26, 2006.

2.

vending-machine vending service enforceable against appellee under the Settlement Agreement.

{¶ 3} For context, Congress enacted the Randolph-Sheppard Act ("RSA") in 1936 to provide blind persons with economic opportunities by authorizing qualified individuals to operate vending facilities on federal property under state-agency-issued licenses. *Ohio v. United States*, 986 F.3d 618, 621 (6th Cir.2021). Through its mini-RSA, Ohio expanded blind-person priority vending to state properties through OOD's Business Enterprise program ("BEP"), as implemented by BSVI, a division of OOD. *Id.*; *see* Ohio Adm.Code 3304:1-21-01(J) (defining the BEP). "The BSVI acts as a middleman by creating two different kinds of contracts. The first kind -- the Bureau-Grantor agreement [("BGA")] -- establishes a property or facility as part of the RSA program and defines the terms for granting use of the facility for RSA vending." *Ohio* at 621; *see* Ohio Adm.Code 3304:1-21-01(F) (defining a BGA as a signed agreement between BSVI and the grantor[3] for a facility[4]). "The second kind -- the Bureau-Operator agreement [("BOA")] -- brings a blind vendor into the program and defines the terms for operating an RSA facility." *Ohio* at 621; *see* Ohio Adm.Code 3304:1-21-01(G) (defining a BOA as

---

[3] A "grantor" is the party responsible for supporting a "facility." Ohio Adm.Code 3304:1-21-01(X).
[4] A "facility" is defined at Ohio Adm.Code 3304:1-21-01(S) and includes one or more "sites" the BEP believes will earn adequate sales to exist as a "facility"; while a "site" is defined at Ohio Adm.Code 3304:1-21-01(PP) as a location suitable for vending, but determined by the BEP to not generate adequate sales to exist as a "facility."

3.

a signed agreement between BSVI and a visually-impaired operator assigning them a "facility"); *see also* Ohio Adm.Code 3304:1-21-06 (BOA requirements).

{¶ 4} Appellant alleged he began operating vending machines in 1993 at the current University of Toledo Medical Center ("UTMC")[5] under a 1992 BGA,[6] to which appellant is not a party and is not a BOA by definition. Nevertheless, it is undisputed that appellant initially operated two vending machines at the current UTMC, known as facility No. 304. In the ensuing years appellant added either 10 or 12 more vending machines, and then appellant administratively grieved, appealed and litigated the right to add 23 more vending machines to his facility No. 304. In 2006, appellant's state and federal claims against appellee were resolved by the subject of this litigation, the Settlement Agreement. Later, appellant applied for and was awarded by appellee the right to be the visually-impaired operator of the self-service vending site called a micro-market.[7] Appellant does not dispute any of the foregoing vending machine/micro-market operations in this litigation.

---

[5] UTMC is located on the University of Toledo's Health Sciences Campus ("UTHSC"), formerly known as the Medical University of Ohio at Toledo and as the Medical College of Ohio at Toledo ("MCO").
[6] Appellant attached to his amended complaint the "Contract to Operate Vending Machines at the Medical College of Ohio at Toledo" dated May 14, 1992, between the State of Ohio, acting by and through BSVI, and MCO.
[7] Appellant attached to his amended complaint the "Amendment to Bureau-Grantor Agreement: Amends Contract # (Original agreement – November 2006)" dated October 14, 2016 between OOD/BSVI/BEP and The University of Toledo.

4.

{¶ 5} On June 6, 2018, appellee and UTHSC entered into a stand-alone BGA[8] for a new suitable location for a vending facility,[9] described as a combination coffee kiosk and sandwich stand, which appellant pursued and prevailed to be the selected blind-vendor operator. Appellant operated the coffee kiosk and sandwich stand, known as the Market Café, until September 2, 2020, when he ceased operations during the Covid-19 pandemic and around the start of the new university semester.[10] UTHSC then notified appellee it was in breach of the 2018 BGA, which UTHSC eventually terminated effective on October 5, 2020. There is currently no BGA in place between UTHSC and appellee for a combination coffee kiosk and sandwich stand at UTMC.[11]

{¶ 6} On June 9, 2021, appellant filed a motion for a temporary restraining order ("TRO"), which appellee opposed. The trial court held the TRO hearing on June 15, and denied the motion on June 17. Also on June 17, appellee notified appellant that the Settlement Agreement was terminated, stating, "with the abolishment of MCO, the non-

---

[8] Appellant attached to his amended complaint the "Bureau-Grantor Agreement" dated June 6, 2018 between OOD/BSVI and UTHSC.

[9] A "suitable vending facility" is defined at R.C. 3304.28(A), which has evolved in recent years through amendments between 1976 and 2017.

[10] After appellant ceased operations, he applied for and received "significant," self-described, federal pandemic-relief funds.

[11] Outside of this litigation, UTHSC and appellee arbitrated whether the site of the combination coffee kiosk and sandwich stand remained a suitable location for a visually-impaired operator, and the OOD arbitration panel determined it is. However, a current BGA is not in the record before us. App.R. 9(A)(1).

5.

payment of a commission, and the passage of fifteen years, this agreement is no longer valid."

{¶ 7} Prior to filing his August 16 amended complaint, on August 13, appellant filed a motion to enforce settlement agreement and for preliminary injunction. The allegations in the motion and the relief sought are repeated in his amended complaint, and the hearing on the motion was held on August 31. Appellee opposed the motion and orally answered the amended complaint at the hearing.[12] The trial court then received post-hearing briefs from the parties on September 8.

{¶ 8} Also on September 8, appellant filed an amended prayer of relief for his pending motion, seeking an order enforcing the Settlement Agreement and preliminary injunctions preventing appellee from: (1) "preventing [appellant] from resuming operation of the coffee and sandwich kiosk known as the Market Café as part of his Facility 304"; (2) "from installing any vendor other than [appellant] as the temporary or permanent licensed blind vendor operator of the coffee and sandwich kiosk known as the Market Café"; and (3) "from installing any vendor other than [appellant] as a temporary or permanent licensed blind vendor operator of any expansion of vending services on the Health Science Campus of the University of Toledo."

---

[12] The trial court placed in the record of the August 31 hearing the following: "The parties have agreed that the response to the amended complaint can be handled orally here today. * * *[OOD] will respond to the amended complaint orally today and reserve[s] the right to file a written motion in response to that amended complaint."

6.

**{¶ 9}** While the motion to enforce settlement remained pending, appellant sought, and the trial court granted on October 18, a TRO against appellee "from 1) entering into any operator agreement, temporary or otherwise, with any vendor other than plaintiff for the purpose of operating the coffee and sandwich kiosk known as the Market Café, which is located inside the University of Toledo Medical Center, or 2) placing any vendor other than Mr. Cyrus as the operator of said coffee and sandwich kiosk."

**{¶ 10}** The TRO remained in effect until the trial court dissolved it on January 27, 2022. Concurrently, the trial court denied appellant's motion to enforce the Settlement Agreement and for a preliminary injunction. Appellant timely appealed and set forth five assignments of error:

> I. The lower court erred by failing to conduct the requisite evidentiary hearing prior to making a final determination on the merits of Appellant's Motion to Enforce Settlement Agreement.

> II. The lower court erred by concluding that the Settlement Agreement is no longer valid due to Appellant not complying with the provision concerning payment of commissions, despite the payment of commissions not be required under Bureau Grantor Agreements since 2014 and the Ohio Attorney General determining in 2014 that payment of such commissions is unlawful.

7.

III. The lower court erred by concluding that the Settlement Agreement is no longer valid due to it not applying to successive Bureau Grantor Agreements, despite the Settlement Agreement making no mention of its continued enforceability being limited to any particular Bureau Grantor Agreement.

IV. The lower court erred, based on the principle of *issue preclusion* (emphasis sic.), by re-examining whether the term "vending services" in the Settlement Agreement refers only to vending machines, when the issue had already been decided by Appellee OOD's Adjudication Order in 2017.

V. Even if the lower court were not bound by the 2017 Adjudication Order in which OOD determined the term "vending services" in the Settlement Agreement means more than only vending machines, the lower court erred by deeming the term unambiguous (despite the term not being defined in the Settlement Agreement) and failing to consider extrinsic evidence that plainly establishes the parties always understood the term as meaning more than only vending machines.

{¶ 11} On March 14, 2022, appellant filed with this court an application for injunction pending appeal, which appellee opposed. On July 6, this court denied appellant's motion.

## II. Analysis

{¶ 12} Each of appellant's assignments of error challenge the outcome of the task he requested from the trial court: to determine whether the Settlement Agreement was enforceable against appellee for a combination coffee kiosk and sandwich stand.  Our determination on the enforceability of the Settlement Agreement is dispositive of appellant's appeal of his concurrent motion for a permanent injunction.

## A. Standard of Review

{¶ 13} "A settlement agreement is a contract designed to terminate a claim by preventing or ending litigation.  * * * Because a settlement agreement constitutes a binding contract, a trial court has authority to enforce the agreement in a pending lawsuit." *Infinite Sec. Sols., L.L.C. v. Karam Properties, II, Ltd.*, 143 Ohio St.3d 346, 2015-Ohio-1101, 37 N.E.3d 1211, ¶ 16.  The interpretation of a contract is a matter of law, which we review de novo. *St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, 875 N.E.2d 561, ¶ 38.

{¶ 14} "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16.  Contract enforceability also rests on whether the terms of the agreement are reasonably certain and clear, and the trial court should hold a hearing if the terms are uncertain. *Id.* at ¶ 17.  Our primary goal in construing a contract is to ascertain, and give effect to, the intent of the parties, which we presume is reflected in the contract itself.  *Bank of New York Mellon v. Rhiel*, 155 Ohio St.3d 558, 2018-Ohio-5087, 122

9.

N.E.3d 1219, ¶ 20; *Bellman v. Am. Internatl. Group*, 113 Ohio St.3d 323, 2007-Ohio-2071, 865 N.E.2d 853, ¶ 11 ("A contract that appears to be a complete and unambiguous statement of the parties' contractual intent is presumed to be an integrated writing").

{¶ 15} "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11. "If a reasonable interpretation of the language exists, then we should give the agreement its intended legal effect." *Laboy v. Grange Indemn. Ins. Co.*, 144 Ohio St.3d 234, 2015-Ohio-3308, 41 N.E.3d 1224, ¶ 10. "When the terms of a contract are unambiguous, courts will not, in effect, create a new contract by finding an intent not expressed in the clear language employed by the parties." *Mike McGarry & Sons, Inc. v. Construction Resources One, LLC*, 2018-Ohio-528, 107 N.E.3d 91, ¶ 94 (6th Dist.).

{¶ 16} We have previously denied appellant's application for injunction pending his appeal. In our July 6, 2022, decision, we pointed out that his arguments in that motion were interwoven with his underlying merit appeal and that his cause may have had some faint ray of hope with a different standard of review. We have utilized a de novo standard of review in this instance which is his direct appeal of the underlying trial court's decision. After consideration of appellant's arguments and examination of the record, we find that he also ultimately cannot prevail under this standard.

{¶ 17} Upon de novo review and as further discussed herein, we find the intent and purpose of the Settlement Agreement is stated in the contract as follows: "[T]he

10.

parties wish to resolve the above-mentioned grievance [filed under Ohio Admin.Code 3304:1-21-14], Federal Court Matter [filed in U.S. District Court for Northern District of Ohio], pending arbitration [filed under 20 U.S.C. 107d-1(a) and d-2], and all other matters as they relate to the expanded vending operation at MCO as defined in paragraph one below."

{¶ 18} Paragraph one of the Settlement Agreement states:

Cyrus shall be awarded the expansion of the vending facility at the Medical College of Ohio which shall consist of twenty-three (23) vending machines to be attached to Facility No. 304, including any future expansion of vending services at the MCO Campus and as long as that is consistent and in compliance with the provisions of the Ohio Revised Code (O.R.C.) Sections 3304.28, et. seq., the Ohio Administrative Code (O.A.C.) Sections 3304:1-21, et. seq., the Randolph-Sheppard Act, 20 U.S.C. Sections 107, et. seq., and contingent upon BSVI and MCO entering into a suitable Grantor Agreement. * * *. BSVI and Cyrus both contemplate a start date no later than November 27, 2006.

{¶ 19} In addition, paragraph nine of the Settlement Agreement states the contract may only be modified if in writing and signed by all parties to the contract: "No other modification, oral or otherwise, shall be deemed to have any legal force and/or effect whatsoever." There is no modification of the Settlement Agreement in the record.

11.

**{¶ 20}** We will address appellant's assignments of error out of order.

### B. Settlement Agreement Enforcement

**{¶ 21}** Appellant's third assignment of error challenges the intent of the parties regarding the Settlement Agreement's application to all future BGAs and regarding the evolving understanding of "vending services."

**{¶ 22}** Appellant argues the first portion of paragraph one of the Settlement Agreement unambiguously entitles him to any expansion of "vending services" at the current UTMC regardless of any particular BGA contemplated by the Settlement Agreement. Appellant argues, citing *Werner v. Progressive Preferred Ins. Co.*, 533 F.Supp.2d 776, 781 (N.D. Ohio 2008), that the lack of a time limit on the Settlement Agreement is evidence of an ambiguity to be construed in his favor for perpetual expansion of his "vending services." However, that court cautioned, "A contract's silence does not necessarily mean that the contract is ambiguous." *Id.*

**{¶ 23}** In response, appellee also argues the Settlement Agreement is unambiguous, but for a different reason. Appellee argues the contract is clearly limited to one BGA, the contemporaneous "Vending Services Agreement,"[13] which, in turn, also

---

[13] Appellant attached to his amended complaint the "Vending Services Agreement" dated October 16, 2006 between The University of Toledo and the ORSC/BSVI/BEP.

12.

clearly limited appellant's authorized "vending services" to vending machines, which is not the combination coffee kiosk and sandwich stand. Appellee argues the parties' understanding of the term "vending services" in 2006 for the purposes of the Settlement Agreement is not the same as that term is used for the RSA and mini-RSA today when determining the eligibility of a suitable-vending facility. Appellee explains that when the combination coffee kiosk and sandwich stand became available in 2018, it was, by definition, a "site" and not a "facility." Consequently, at that time "it was added to Appellant's existing facility to the exclusion of other blind vendors." Finally, appellee argues the relief appellant seeks is futile because under Ohio Adm.Code 3304:1-21-03(E)(6), appellant is ineligible to return to the combination coffee kiosk and sandwich stand as its visually-impaired operator.

{¶ 24} The trial court's judgment entry explains the issue presented by appellant's motion: "While the full background of this matter and a basic understanding of the purposes underlying [appellant's] business operation are important, the present issue before the Court boils down to a contract dispute. In 2006, [appellant] reached the settlement agreement at issue to end previous litigation with BSVI/OOD regarding vending services at what was then-known as the Medical College of Ohio." We agree with the trial court's explanation of why the Settlement Agreement is no longer enforceable for a combination coffee kiosk and sandwich stand:

13.

Notably, the parties agree that the legal framework for blind vending operations in Ohio has changed since 2006 and no longer permits commissions to be charged. As such, Plaintiff has not paid commissions for several years. Additionally, OOD is correct that the 2006 settlement agreement does not state that it is applicable to future BGAs. While the Court declines to address OOD's argument related to the name changes/successive operation of MCO/UTMC, simply put, such discussion is unnecessary to reach a decision in this case. When the Court views this situation as a whole, it finds the 2006 settlement agreement between Plaintiff and BSVI/OOD is no longer applicable. Even if Paragraph 4 of the 2006 agreement (Commissions) is severed (as contemplated by Paragraph 7) because commissions are no longer permitted, the fact remains that several BGAs have come and gone since the agreement was enacted, and it does not state that it applies to successive BGAs. As such, the Court finds the 2006 settlement agreement between Plaintiff and BSVI/OOD is no longer valid. Plaintiff's motion to enforce is therefore denied.

{¶ 25} The Settlement Agreement is the BOA/first piece of BSVI's two-piece puzzle. *See Ohio*, 986 F.3d at 621. When paragraph one of the Settlement Agreement is viewed in its entirety, it unambiguously identifies a number of conditions precedent to

14.

appellant's right to the expansion of "vending services" at the current UTMC, including, specific reference to 23 vending machines to be attached to facility No. 304 "and contingent upon BSVI and MCO entering into a suitable Grantor Agreement." The Settlement Agreement makes no reference to any additional or successive BGAs after "a suitable Grantor Agreement" is entered into.

{¶ 26} Because the Settlement Agreement explicitly references "a suitable [BGA]," *see id.*, which is the second piece of BSVI's puzzle, we may look to that BGA for additional evidence of the parties' intent for appellant's "vending services" under the BOA. The BGA entered into contemporaneously with the Settlement Agreement is called the "Vending Services Agreement," effective from November 27, 2006, to June 30, 2008, and subject to one-year conditional extensions, pursuant to paragraph two. Notably, the BGA's effective date aligns with the appellant's anticipated start of the vending services under paragraph one of the Settlement Agreement. The 2006 BGA was eventually terminated effective October 5, 2020.

{¶ 27} Paragraph one of the 2006 BGA begins with, "The University grants to the Contractor [ORSC/BSVI/BEP] the right to sell the mutually agreed food, food products, candy, snacks and beverages in specified vending areas in the Campus and only from vending machines." The limitation to vending machines is reinforced in paragraph four, which begins with, "The Contractor agrees that it will require its licensed blind operator to offer for sale and serve only food, food products, candy and beverages in the Vending

Service Locations and from vending machines only." The limitation to vending machines is further reinforced in paragraph 20, which begins with, "The Contractor agrees that it will ensure that the variety of products being supplied in its vending machines will be an appropriate mix for the persons utilizing the products in each Vending Service Location * * *."

{¶ 28} The trial court's decision reached the same result:

It is clear in paragraph 1 of the 2006 settlement agreement, the parties defined the meaning of what was awarded to Cyrus: "Cyrus shall be awarded the expansion of *the vending facility* at the Medical College of Ohio *which shall consist of twenty-three (23) vending machines to be attached to Facility No. 304*, including any future expansion of vending services at the MCO Campus." [Emphasis added.] The "vending services" referenced in the contract are clearly vending "machines." The market café at issue in this dispute is not a vending machine. As such, the 2006 settlement agreement does not entitle Plaintiff to operate the market café to the exclusion of any other vendor.

For the sake of argument, if the term "vending services" is considered an undefined term in the 2006 settlement agreement, the following analysis is required to determine if it is ambiguous * * * [citing] *PNC Bank, N.A. v. Springboro Med. Arts, Inc.*, 2015-Ohio-3386, 41 N.E.3d

145, ¶ 30 (2d Dist.). When the Court reviews the four corners of the 2006 settlement agreement, the only "vending services" referenced therein are vending machines. As such, if the Court finds the term "vending services" to be unambiguous, it must be construed to mean services from vending "machines."

Even if the Court were to find the term "vending services" to be ambiguous and consider extrinsic evidence, it would also find the term only applies to/references vending machines. OOD correctly notes that the parties' October 16th, 2006, Vending Services Agreement (Exhibit D to Plaintiff's Motion) states the following: "The University grants to the Contractor the right to sell the mutually agreed food, food products, candy, snacks and beverages in specified vending areas on the Campus and only from vending machines." If the 2006 settlement agreement is still enforceable – which the Court explicitly finds it is not – the agreement only applies to vending machines. As such, the 2006 settlement agreement would not automatically entitle Plaintiff to operation of the market café at issue in this case.

**{¶ 29}** We agree. Upon de novo review, we find the Settlement Agreement is clear and unambiguous and reflects the intent of the parties to it. We find the reasonable interpretation of the intent of the parties to the Settlement Agreement regarding

17.

appellant's "vending services" was limited to expansion of vending machines at the former MCO that resolved the disputes and litigation by appellant against appellee. The Settlement Agreement was subject to the contemporaneous BGA entered into between the University of Toledo and appellee. We further find the Settlement Agreement is not enforceable by appellant against appellee for the so-called Market Café, a non-vending-machine combination coffee kiosk and sandwich stand.

{¶ 30} Appellant's third assignment of error is not well-taken.

### C. Evidentiary Hearing

{¶ 31} In light of our decision on appellant's third assignment of error that the Settlement Agreement is clear and unambiguous, we next dispose of his first assignment of error.

{¶ 32} In support of his first assignment of error, appellant argues the trial court "failed to conduct an evidentiary hearing prior to making a final determination on the merits of Cyrus' Motion to Enforce Settlement Agreement." Appellant cites to *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 683 N.E.2d 337 (1997), syllabus, which states, "Where the meaning of terms of a settlement agreement is disputed, * * * a trial court must conduct an evidentiary hearing prior to entering judgment."

{¶ 33} Appellee responds that appellant waived the right, if any, to an evidentiary hearing for alleged ambiguities in the Settlement Agreement when it agreed to a hearing limited to oral argument on the briefs, citing *Loch v. Myers*, 6th Dist. No. L-20-1159,

18.

2021-Ohio-2623, 176 N.E.3d 98, ¶ 40, and citing an August 17, 2021 conference call among the trial court and the parties.

{¶ 34} Upon de novo review, we find no evidentiary hearing was necessary in light of our determination on appellant's third assignment of error. Alternatively, even if there was ambiguity in the Settlement Agreement, the necessary hearing was held on August 31, 2021,[14] with additional post-hearing briefing and pleadings in the record, prior to the trial court's decision. *Kostelnik*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, at ¶ 17.

{¶ 35} Appellant's first assignment of error is not well-taken.

### D. Extrinsic Evidence

{¶ 36} In light of our decision on appellant's third assignment of error that the Settlement Agreement is clear and unambiguous, we next dispose of his fifth assignment of error.

{¶ 37} In support of his fifth assignment of error, appellant argues that the term "vending services" in the Settlement Agreement is ambiguous by a practical interpretation of the contract and by appellee's course of conduct, citing *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 180 (6th Cir.1996). However, that court, interpreting Michigan law, determined the parties' dispute over an oral agreement for

---

[14] The 115-page transcript of the August 31 hearing, at which appellant and his counsel were present, is in the record. At the hearing appellant presented all of the evidence and legal arguments in support of his motion.

19.

post-termination commissions was "particularly ill-suited for resolution at the summary judgment stage," which is not the matter before us. *Id.* at 181. Nevertheless, appellant argues the parties have "always understood [vending services] to include services beyond only vending machines." Appellant points to his reply in support of his motion filed on the eve of the hearing for the extrinsic evidence of a written response to an interrogatory from OOD "in the recent federal court litigation."[15] Appellant argues OOD admits 14 years after the Settlement Agreement that appellant is entitled to have the Market Café deemed his exclusive "vending services" under the Settlement Agreement.

{¶ 38} Appellee responds that extrinsic evidence is not required to determine the clear and unambiguous language in the Settlement Agreement. We agree.

{¶ 39} Upon de novo review, we find no extrinsic evidence[16] was necessary in light of our determination on appellant's third assignment of error. We will not insert an alleged intent from 2020 for "vending services" that arose 14 years after the contract was entered into. "Only when the language of a contract is unclear or ambiguous, or when the

---

[15] Attachment two of appellant's August 30, 2021 reply is entitled, "Responses to Defendant University of Toledo's First Set of Interrogatories and Requests for Production of Documents to Defendant Opportunities for Ohioans with Disabilities," dated November 9, 2020, in a matter captioned, *James Cyrus v. Dr. Gregory Postel, et al,* in the U.S. Northern District Court of Ohio, case No. 3:20-cv-02287.

[16] Appellant's representation of the accuracy of interrogatory No. 3 in his federal litigation against appellee and the University of Toledo, a non-party in this appeal, is questionable and, in any event, does not create an ambiguity in his favor. On December 31, 2020, the U.S. Northern District Court of Ohio granted the separate motions to dismiss appellant's complaint filed by the University of Toledo and appellee. The record does not include the referenced complaint.

20.

circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions." *Shifrin v. Forest City Enterprises, Inc.*, 64 Ohio St.3d 635, 638, 597 N.E.2d 499 (1992). As previously discussed, both the language of the Settlement Agreement and the surrounding circumstances of the contemporaneous 2006 BGA confirm the clear and unambiguous intent of the parties that appellant's contractually-authorized vending services are limited to vending machines. "When the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Id.*

{¶ 40} For the foregoing reasons, appellant's fifth assignment of error is not well-taken.

### E. Res Judicata

{¶ 41} In light of our decision on appellant's third assignment of error that the Settlement Agreement is clear and unambiguous, we next dispose of his fourth assignment of error.

{¶ 42} In support of his fourth assignment of error, appellant argues the trial court erred when it determined the intent of the parties behind the term "vending services" in the Settlement Agreement did not include appellant's Market Café. Appellant argues his Market Café location should be considered a "future expansion of vending services at the MCO Campus" pursuant to paragraph one of the Settlement Agreement. Appellant

21.

further argues the trial court ignored extrinsic evidence of "an Adjudication Order issued in 2017 in response to a grievance filed by another blind operator, [against] OOD." Appellant concludes that because the issue of "vending services" has actually been litigated "in a prior forum in which OOD had a fair opportunity to participate (and itself made the final determination), the lower court should be bound by the Adjudication Order by way of issue preclusion," citing *United States v. Cinemark USA, Inc.*, 348 F.3d 569, 583 (6th Cir.2003). Upon de novo review, we disagree with appellant for the reasons set forth above for his fifth assignment of error and as stated below.

{¶ 43} "The doctrine of *res judicata* involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel)." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381, 653 N.E.2d 226 (1995). "A derivative of res judicata, collateral estoppel bars 'the relitigation of a point of law or fact that was at issue in a former action between the same parties and was passed upon by a court of competent jurisdiction.' It requires 'an identity of parties and issues in the proceedings' and applies equally to administrative hearings." (Citations omitted.) *State ex rel. Kincaid v. Allen Refractories Co.*, 114 Ohio St.3d 129, 2007-Ohio-3758, 870 N.E.2d 701, ¶ 8.

{¶ 44} Appellant points us to exhibit D of his affidavit attached to his October 18, 2021 TRO motion, in which he identifies as, "a true and correct copy of an Adjudication Order issued by OOD in 2017 related to the Market Café' and sandwich kiosk." Our

22.

review of exhibit D shows that it is an adjudication order issued on April 24, 2018 by the acting deputy director of BSVI denying a grievance filed by Derek Neufarth on October 4, 2017. Appellant is not mentioned in the adjudication order for Mr. Neufarth's grievance, and Mr. Neufarth's grievance is not clearly described in the order. In addition, we find that the subject of this appeal, the Settlement Agreement, neither mentions nor references Mr. Neufarth, and Mr. Neufarth has never been a named party in this litigation. Thus, the adjudication order, at a minimum, does not involve the same parties as this litigation, and res judicata/issue preclusion does not apply.

{¶ 45} Appellant's argument fails for another reason. Despite appellant pointing us to his TRO motion filed almost two months after the August 31 hearing held on appellant's motion to enforce settlement agreement, we find that the parties extensively argued at the hearing their opposing positions on the relevance of the adjudication order. Importantly, the record shows that appellant did not bring to the trial court's attention, either during the hearing or in his post-hearing brief or subsequent pleadings, his claim of res judicata/issue preclusion. Consequently, the trial court's decision did not determine the res judicata/issue preclusion argument appellant now raises on appeal, and this court may not rule on a question of res judicata that the trial court did not first decide in a final, appealable order. *Lycan v. Cleveland*, 146 Ohio St.3d 29, 2016-Ohio-422, 51 N.E.3d 593, ¶ 22.

{¶ 46} Appellant's fourth assignment of error is not well-taken.

23.

## F. Commission Payments

{¶ 47} In light of our decision on appellant's third assignment of error that the Settlement Agreement is unenforceable in the manner appellant argues, we next dispose of his second assignment of error in which appellant argues the trial court improperly relied on paragraph four, a severable paragraph regarding paying commissions, to determine the entire contract is unenforceable. We disagree.

{¶ 48} Paragraph four of the Settlement Agreement states, "[a] commission rate pursuant to the Bureau-Grantor agreement shall be paid by Cyrus to MCO." While neither party disputes that paragraph four is clear and unambiguous as written, they agree the Ohio Attorney General invalidated such commission payment clauses in a BGA entered into between OOD/BSVI and a state college or university. 2014 Ohio Atty.Gen.Ops. No. 2014-008. Nevertheless, we previously determined, upon de novo review, the Settlement Agreement when viewed as a whole is unenforceable for the non-vending-machine combination coffee kiosk and sandwich stand. The trial court did not rely on the issue of paying commissions to reach its determination, nor do we.

{¶ 49} Appellant's second assignment of error is not well-taken.

## III. Conclusion

{¶ 50} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

24.

Judgment affirmed.

James E. Cyrus
v. Ohio Rehabilitation Services
Commission n/k/a Opportunities
for Ohioans with Disabilities,
Bureau of Services for the
Visually Impaired
L-22-1031

        A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.        _____
                                                    JUDGE
Gene A. Zmuda, J.        
CONCUR.                          _____
                                                    JUDGE

Christine E. Mayle, J.        _____
CONCURS IN JUDGMENT                 JUDGE
ONLY.

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.

26.